UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELECTRONIC FRONTIER FOUNDATION,

Plaintiff,

v.

NATIONAL SECURITY AGENCY, et al.,

Defendants.

Case No. 14-cv-03010-RS

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Electronic Frontier Foundation ("EFF") brought this action under the Freedom of Information Act, 5 U.S.C. § 552 (2012) ("FOIA") to obtain documents relating to the National Security Agency's development and implementation of the so-called "Vulnerabilities Equity Process"—a set of protocols and principles used by the government in deciding whether and when to disclose computer security flaws. By the time the parties presented their cross-motions for summary judgment, only a single document remained in dispute. That document is entitled, "Commercial and Government Information Technology and Industrial Control Product or System Vulnerabilities Equities Policy and Process" ("the VEP Document"). It was produced by the government to EFF in this litigation, with certain redactions. Although the government lifted some of the redactions during the course of this motion practice, EFF contends the remaining redactions should also be removed.

At EFF's urging, the Court has reviewed the VEP Document *in camera.*[1] For the reasons set out below, the remaining redactions protect information that is exempt from disclosure under FOIA. Accordingly, the government's motion for summary judgment will be granted, and EFF's cross-motion denied.

## II. LEGAL STANDARD

"FOIA 'was enacted to facilitate public access to Government documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). Congress designed FOIA "to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny." *Ray*, 502 U.S. at 173 (internal quotation marks omitted). Consequently, there is a "strong presumption in favor of disclosure," *id.*, and "exemptions should be interpreted narrowly," *Lahr*, 569 F.3d at 973 (internal quotation marks omitted).

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F.Supp.2d 880, 893 (C.D.Cal.2006). The usual summary judgment standard does not extend to FOIA cases because the facts are rarely in dispute and courts generally need not resolve whether there is a genuine issue of material fact. *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir.1996).

In cases such as this, the task of the court is to determine whether any requested documents (or portions thereof) that have been withheld fall within the claimed exemptions, based on a *Vaughn* index, the accompanying declarations, and in some instances an *in camera* review.

---

[1] EFF argued that *in camera* review was particularly appropriate and necessary in this instance because, in its view, the government's declarations should be viewed with distrust, given the overbreadth of the original redactions to the VEP document. Whether or not the government may have initially made some redactions without an adequate basis to do so, there is no indication of bad faith or even of recklessness, and the process by which the government reconsiders its position in light of a FOIA plaintiff's arguments is one that should not be penalized. Accordingly, while *in camera* review of the VEP document ultimately appeared appropriate under all the circumstances, it was not motivated by any specific distrust of the government's declarations.

*Schiffer v. F.B.I.*, 78 F.3d 1405, 1409 (9th Cir. 1996). The court must also examine whether the government has satisfied its burden of establishing that "all reasonable segregable portions of the document[s] have been segregated and disclosed." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008); 5 U.S.C. § 522(a)(4)(B), (b). In this instance, prior to the hearing the court had reviewed *in camera* a partially-classified declaration describing the grounds on which redactions had been made to the VEP document. At EFF's urging, and without objection from the government, the court subsequently conducted an *in camera* review of the complete classified VEP document.

### III.  DISCUSSION

A.  Exemptions 1 and 3

Much of the redacted material in the VEP document has been withheld under Exemptions 1 and or 3 of FOIA, 5 U.S.C. § 522(b)(1) and (3), which relate to classified information and other sensitive intelligence materials. The issue in this case is *not* whether the withheld information ordinarily would fall within the scope of these exemptions, but whether the government has lost the right to claim the exemptions as the result of prior official public disclosures of the same basic information.

When information has been "officially acknowledged," its disclosure may be compelled even over the government's otherwise valid exemption claim. *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990). To be "officially acknowledged," however, the information requested must (1) be as specific as the information previously released, (2) "match" the information previously disclosed, and (3) have been made public through an official and documented disclosure. *Id.* Here, EFF (like most FOIA plaintiffs) is operating at the disadvantage of not knowing with certainty what information lies beneath the redactions in the VEP document. Based on context, EFF has constructed an argument that the withheld information likely matches and is of equivalent specificity to certain prior official disclosures. Although EFF's speculation was not necessarily unreasonable given what it could view in the VEP document, *in camera* review of the classified

declaration, subsequently confirmed by *in camera* review of the entire VEP document itself, established that the redacted information has not been previously "officially acknowledged" or disclosed such that the exemptions may no longer be claimed.[2]

B. <u>Exemption 5</u>

FOIA does not require the government to disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522(b)(5). "Exemption 5 shields those documents, and only those documents, normally privileged in the civil discovery context," including documents covered by attorney-client and deliberative-process privileges. *Lahr*, 569 F.3d at 979 (internal quotation marks omitted) (deliberative-process privilege); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) (attorney-client privilege).

The applicability of Exemption 5 is in dispute as to two categories of information. First, the government has redacted "header" information on the VEP document. EFF argues that even if the header information reflects or includes pre-decisional recommendations, upon adoption of the VEP document, it is no longer protected. *See N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975) ("[I]f an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5."). EFF is not wrong to consider the header as roughly analogous to a separate pre-decisional memorandum containing recommendations regarding the VEP document. As such, however, it does *not* lose its protection merely because the VEP document was adopted as a final policy. As stated in *Sears*:

---

[2] Plaintiffs correctly observe the test does not require "absolute identity" between the withheld information and the prior official public disclosure. *See New York Times Co. v. Dep't of Justice*, 756 F.3d. 100, 120 (2d Cir. 2014). Nevertheless, the differences in detail and substance here go beyond what would preclude continued reliance on the exemptions under *New York Times*.

> Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.

421 U.S. at 153 (quotation marks and citations omitted).

The header here is not an embodiment of the Vulnerabilities Equity Process, but a reflection of the "group thinking" involved in "working out" what that policy would be—a policy then expressed and embodied in the balance of the VEP document. Had the contents of the header been stated on a separate cover memo stapled to the VEP document as it circulated prior to adoption, there would be no dispute that Exemption 5 applied. The fact that it was printed on the top of each page instead does not change the substance of the analysis.

Finally, EFF argues the government may not withhold the names of "small government components" mentioned in the VEP document. Although the question is close, under the particular circumstances here, the government's contention that disclosure of those names would implicate the deliberate process is persuasive. *See*, *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) ("In some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege.")

### IV.  CONCLUSION

In light of the foregoing discussion, the government's motion for summary judgment is granted, and EFF's cross-motion is denied. Within 20 days the government shall submit a proposed final judgment, approved as to form by EFF.

**IT IS SO ORDERED**.

Dated:  March 17, 2016

_____
RICHARD SEEBORG
United States District Judge